## Bowman v. Manter.

If the mortgagor pays and takes up the note secured, and the next day re-delivers it to the mortgagee, takes back part of the money paid on the note, has the balance endorsed on it, and agrees with the mortgagee that the mortgage shall remain as security for the money repaid to him, and for a collateral liability of the mortgagee, the mortgage having been once discharged by payment of the debt secured, is not revived by the subsequent transaction, as against a creditor of the mortgagor, who levies his execution on the land without notice.

WRIT OF ENTRY, dated March 28, 1854. The following facts appeared on an agreed case : On the 29th day of June, 1844, one Josiah Stowell mortgaged the demanded premises with other lands, to the tenant, to secure the payment of nine hundred dollars, according to a note of that date. On the 10th of December, 1847, the tenant released a certain portion of the land mentioned in the mortgage, but not the land in dispute, to Stowell to enable him to convey it to one John Huse. Huse refused to take a conveyance of the land from Stowell, upon his warranty, because there were claims upon some of the land, and Stowell's warranty was not deemed sufficient by Huse to enable Stowell to make the conveyance to Huse. Manter, at the request of Stowell, gave a bond to Huse, guaranteeing the title. Thereupon Huse took the conveyance, and paid to Manter, by Stowell's request, the amount of Manter's claim against Stowell, and Manter gave the nine hundred dollar mortgage note to Stowell, and the parties separated ; but the next morning, December 14, 1847, Stowell returned to Manter with the note, and proposed to endorse a part of the money paid on the note, and to take a receipt for the balance of the money, and to leave the note and mortgage with Manter as security to him against his liability on the bond to Huse. Thereupon Stowell made the endorsement on the note, and took from Manter a receipt for the balance of the money, and re-delivered the note to Manter, to remain with the mortgage in his hands as security against the bond to Huse. That bond is still outstanding in the hands of F. G. Stark, where it was originally placed for the benefit of

Huse, and a suit is now pending against Huse for a portion of the land conveyed by Stowell to him, arising out of a claim made by Joel Page. The note and mortgage have ever since remained in the hands of Manter for security as aforesaid. On the 7th day of April, 1848, the demandant caused the premises in dispute to be attached on a writ against Stowell, and recovered judgment April term of this court, 1852, and levied an execution on the land.

*Morrison, Fitch & Stanley,* for the plaintiff.

*D. & D. J. Clark,* for the defendant.

PERLEY, C. J. Manter gave his bond to Huse for Stowell without any security, or bargain, or contract for security from Stowell. When the land was conveyed to Huse by Stowell nine hundred dollars of the purchase money was paid by Stowell's request to Manter, the holder of the note and mortgage, who took the money and gave up the note to Stowell. The note was then paid and discharged by Stowell, who owed it. The money was his, being the price of his land sold to Huse, and in law was paid by him, being paid by his request. This discharged the mortgage without any release or other writing.

This is entirely different from the case where one having an interest in land advances money due on a mortgage to protect his own estate, and is allowed in equity, though the form of the transaction was a payment of the debt, to keep the mortgage on foot for security of the money advanced. The note was in this case paid by the maker and debtor to the payee and mortgagee, who had no remaining interest in the land. Until the new arrangement, upon which the note was re-delivered to Manter, there was nothing from which any agreement, understanding or intention could be inferred to uphold the mortgage after the note was paid. The defendant must rely on the new agreement and the re-delivery of the note. But this could not have the effect to restore the note and mortgage, once paid and discharged, so

that they should operate against third persons from the original date and delivery, in the same way as if they had never been paid.

If the old note once paid had been re-delivered on a new consideration, with the intention of making it the evidence of a new debt, it might perhaps have been valid between the parties for that purpose, as in the case of re-issued bank notes. But this would not revive the extinguished mortgage. And so, if the old mortgage had been re-delivered with the old note, and the intention of the parties was that they should be a new security for a new debt then contracted, there are authorities which go to show that the re-delivery of the old mortgage might, between the parties, give it the effect of a new deed. *Goodright* v. *Strahan*, Douglass 54, note; *Hudson* v. *Revett*, 5 Bing. 368. But in such case the new deed, if there was nothing more than a simple re-delivery, would be without witnesses, without acknowledgment, and without registration, and could not affect third persons who had no notice. It would be in law a new deed and a new security, and must be treated as such.

In this case there was no re-delivery of the old mortgage, nor any notice to the demandant.

On the case agreed there must be

*Judgment for the demandant.*